**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RALPH J. TORLUCCI, JR.,                  )   NO. EDCV 09-1126 SS
                                         )
                    Plaintiff,           )
                                         )
          v.                             )   **MEMORANDUM DECISION AND ORDER**
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of the Social              )
Security Administration,                )
                                         )
                    Defendant.           )
_____ )

**I.**

**INTRODUCTION**

Ralph J. Torlucci, Jr. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Supplemental Security Income ("SSI") and various other benefits administered by the Social Security Administration.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

On March 30, 2007, Plaintiff protectively filed an application for SSI and for benefits under other programs administered by the Social Security Administration. (Administrative Record ("AR") 10, 65-68, 100). He alleged disability due to Bipolar Disorder and anxiety.  (AR 131). He alleged a disability onset date of March 7, 2006. (AR 100).

The Agency denied Plaintiff's claims initially on June 13, 2007. (AR 69-72).  This denial was upheld upon reconsideration.  (AR 74-78). On September 16, 2008, the ALJ conducted a hearing to review Plaintiff's claim.  (AR 26).  The ALJ denied benefits on February 26, 2009.  (AR 18).  Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on May 13, 2009.  (AR 1).  Plaintiff commenced the instant action on June 23, 2009.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on August 30, 1962 and was forty-six years old at the time of the hearing.  (AR 27-28, 100).  He has some college education.  (AR 28).  He has past work experience as a store manager, waiter, bartender, and set designer.  (AR 28-29).

//

//

//

2

**A.    Plaintiff's Medical History**

Plaintiff's medical records show that he sought treatment from the San Bernardino Department of Behavioral Health on December 5, 2006 and was diagnosed with Bipolar Disorder, PTSD, and cannibis abuse, as well as chronic pain in his hand.  (AR 180).  Plaintiff was assigned a GAF score of 50.  (Id.)  The remainder of his treatment notes reveal complaints of anxiety (AR 181, 183, 243), cannibis abuse, perhaps due to use of medicinal marijuana (AR 183), pain in his right hand (AR 184), and racing thoughts.  (AR 189, 231).  On January 13, 2007, Dr. Adly Azab examined Plaintiff, noting that Plaintiff complained of anxiety, poor sleep, periods of euphoria alternating with periods of crying, and feelings of vulnerability.  (AR 181).  Plaintiff was again assessed with Bipolar Disorder and a GAF of 50.  (AR 182, 244).  The medical records also show treatment for an injury to his right thumb.[1]  (AR 204-23).

**B.    Consultative Examinations**

K.D. Gregg, M.D., performed a consultative examination, including a Mental Residual Functional Capacity ("Mental RFC") assessment, on Plaintiff on May 30, 2007.  (AR 161).  Dr. Gregg noted previous diagnoses of Bipolar Disorder (AR 164, 180), PTSD (AR 165, 180), and a substance addiction disorder.  (AR 167, 180).  Addressing Plaintiff's functional limitations, Dr. Gregg found mild limitation restricting daily living activities; moderate limitation in maintaining social

---

[1]    As the ALJ noted, many of Plaintiff's treatment notes are illegible.  (AR 16; see also, e.g., AR 186-195, 229-33).

functioning and maintaining concentration, persistence or pace; and no evidence of repeated episodes of decompensation of extended duration. (AR 169). Dr. Gregg noted that he found little to support Plaintiff's diagnoses and that Plaintiff's cannibis use could account for the anxiety, depression, and decreased focus and memory. (AR 171). In the "Summary Conclusion" section of the form, Dr. Gregg stated there were "moderate[]" limitations in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; and ability to interact appropriately with the general public. (AR 172-73). As to the Mental RFC, Dr. Gregg asserted that Plaintiff was capable of nonpublic, simple repetitive tasks. (AR 174).

Psychiatrist Jason Yang, M.D., performed a consultative examination on November 6, 2008. He noted that Plaintiff lived alone and was able to eat, dress, and bathe independently; do some household chores, errands, and cooking; manage his own money; go places alone; visit with family and friends; and get along "adequately" with others. (AR 264). He diagnosed Plaintiff with Depressive Disorder, Not Otherwise Specified, found his psychosocial/environmental stressors moderate, and assessed a GAF score of 66. (AR 265). Dr. Yang noted that, at the time of the examination, Plaintiff would have "some mild difficulty performing complex tasks." (Id.). Dr. Yang found that Plaintiff's impairment did not affect his ability to understand, remember, and carry out instructions; his ability to interact appropriately with supervisors, co-workers, or the public; or any other capabilities. (AR 266-67).

4

Internist Bryan H. To., M.D., performed a consultative examination on November 13, 2008.  (AR 270).  Dr. To noted that Plaintiff had been to the emergency room for complaints of right hand injury and pain and that medical records indicated a sleep problem.  (AR 270).  Plaintiff also reported headaches and back pain.   (AR 270-71).   Dr. To's functional assessment found that Plaintiff could push, pull, lift, and carry 50 pounds occasionally and 25 pounds frequently; he could stand and walk six hours in an eight-hour workday; he had no restrictions in sitting; he could frequently walk on uneven surfaces, climb ladders, work with heights, bend, kneel, stoop, crawl, and crouch.  (AR 274).  There were no hearing and seeing restrictions, no environmental limitations, and no need for an ambulatory device.  (AR 274-75).

**C.   Third-Party Report**

Scott C. Wilken, Plaintiff's friend, submitted a function report describing how Plaintiff's conditions limit Plaintiff's activities.  (AR 122).   Mr. Wilkin asserted that, since the onset of Plaintiff's condition, Plaintiff had been unable to leave the house, hold a job, handle confrontations, or sleep well.  (AR 123).  Plaintiff required reminders to take his medicine and sometimes did not have an appetite.  (AR 124).  The report reflects that Plaintiff did not go outside often.  (AR 125, 126).  Regarding Plaintiff's interpersonal relationships, Mr. Wilken reported that Plaintiff was sensitive and easily hurt, got defensive with authority figures, and had ceased most of his social activity.  (AR 127-28).  Plaintiff was unusually afraid that his house would be broken into.  (AR 128).  Finally, Mr. Wilkin asserted that Plaintiff had "waves of depression," that "little, insignificant things

5

1  w[ould] ruin his day," and that he had become a recluse because of his
2  fear and suspicion.  (AR 129).

3

4  **D.    Plaintiff's Testimony**

5

6      Plaintiff testified that his last job, which was as a video store
7  manager, ended in 2006.  (AR 28).  His prior work experience included
8  work as a waiter, bartender, and a set constructor and designer for a
9  community college theater department.  (AR 29).  Plaintiff asserted that
10 he could no longer work because his "mind won't stop racing so it's hard
11 to concentrate," and because he was afraid to leave his house.  (AR 30,
12 49).  He attributed these symptoms to a home invasion during which both
13 he and his roommate were beaten, and subsequent harassment at his place
14 of work by the perpetrators.  (Id.).  During this incident, his right
15 thumb, which had previously been broken, was rebroken.  (AR 31).  He
16 testified that he was also attacked, in a separate incident, by a man
17 with whom he had been intimate.  (AR 52-53).  This led to a generalized
18 fear.  (AR 57-58).

19

20     Plaintiff testified he was undergoing psychiatric and psychological
21 treatment, and that his medications--Lexapro, Depakote, and Klonopin--
22 helped him to function.  (AR 32-33).  He explained his history of non-
23 compliance with his medication as being caused by side-effects of his
24 previous medications.  (AR 33, 55-56).  Plaintiff admitted to smoking
25 marijuana, for which his prescription had recently run out, about once
26 a week for anxiety.  (AR 33-34).  He testified that he had trouble
27 concentrating.  (AR 35-36).  Plaintiff stated that he was sometimes able
28

to concentrate playing video games or cards with his friends.  (AR 37-38, 51).

     Plaintiff was being supported by his mother, whom he testified was recently hospitalized and in a coma.  (AR 39).  He grocery shopped for himself, did his own laundry and cleaning, and was able to prepare simple meals.  (AR 40-41).  He reported being capable of watching television and reading.  (AR 42).  He testified to bouts of uncontrolled crying.  (AR 43).

**E.   Vocational Expert's Testimony**

       Vocational Expert ("VE") Kelly Wynn-Voitay testified that Plaintiff's past relevant work as a video store manager, cake decorator, waiter, bartender was all light, skilled or semi-skilled work.[2]  (AR 61, 62).  She then answered two hypotheticals.  First, the ALJ asked her to assume "a younger individual [who] has . . . a twelfth-grade education, is literate, speaks English, and [has] the work experience outlined . . . .  [T]his person can do nonpublic simple repetitive tasks.  Would he be able to do any of the past jobs?"  (AR 62).  The VE opined that such a person could not do any of the past relevant work, but could perform work as a Hand Packager and Office Helper.  (AR 63).  The second hypothetical added that, in addition to not being able to work with the public, the individual could not work with coworkers or supervisors.

_____

     [2]  The VE did not know the exertional level of a set designer, but testified that it was skilled work.  (AR 62).

(Id.).  With those restrictions, the VE testified, there would be no work the individual could perform.  (Id.).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

---

[3]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

     In order to satisfy step three and meet a listing for a mental disorder, "a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work." Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001).  In order to satisfy the criteria in

9

paragraph B, a plaintiff's impairments must result in "'at least two of the following':

> 1.   Marked restriction in the activities of daily living; or
> 2.   Marked difficulties in maintaining social functioning; or
> 3.   Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4.   Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)."

Id. at 1203-04.  To satisfy paragraph C, a plaintiff must have had one of the following, depending on the disorder: (1) repeated episodes of decompensation; (2) marginal adjustment such that a minimal increase in mental demands or a change in the environment would cause decompensation; (3) an inability to function outside of a highly supportive living arrangement; or (4) a complete inability to function independently outside of the home.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04C; id. at § 12.06C.

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must

10

show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001).

**V.**

**THE ALJ'S DECISIONS**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 18).  At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since March 7, 2006.  (AR 12).  Next, he found that Plaintiff had the severe impairments of Affective Mood Disorder and Anxiety Disorder.  (Id.). At the third step, he found that Plaintiff's impairments did not meet or medically equal one of the listed impairments because neither the paragraph B nor paragraph C criteria were satisfied.  (AR 12-13).  At step four, the ALJ found that Plaintiff could perform "a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to simple repetitive tasks and no public contact."  (AR 14).

11

At step five, the ALJ found that Plaintiff could not perform his past relevant work, but that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (AR 17). In particular, the ALJ concluded that Plaintiff could perform the job requirements of Hand Packager and Office Helper. (AR 18). Thus, Plaintiff was not disabled. (Id.).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when his findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

12

VII.

**DISCUSSION**

Plaintiff contends that there are several errors in the Commissioner's decision. First, he claims that the ALJ did not properly consider Dr. Gregg's findings. (Jt. Stip. at 3-4). Second, he claims that the ALJ did not properly consider the treating psychiatrist's opinion. (Id. at 5). Third, he claims that the ALJ posed an incomplete hypothetical to the VE. (Id. at 10). Fourth, he asserts that the ALJ improperly determined that Plaintiff could perform the jobs of Hand Packager and Office Helper. (Id. at 13). For the reasons discussed below, the Court disagrees with all of Plaintiff's contentions.

**A.   The ALJ Properly Considered Consultative Physician Gregg's Opinion**

Plaintiff argues that the ALJ erred by "failing to expressly accept or reject Dr. Gregg's findings and in explaining the weight given to the doctor's opinion." (Jt. Stip. at 4). Plaintiff asserts that Dr. Gregg assessed moderate limitations in Plaintiff's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to interact appropriately with the public. (Id. at 3). He argues that this "moderate" limitation could "reasonabl[y] [be] extrapolate[d] . . . [as] equivalent to a significant limitation that would greatly impact . . . Plaintiff's mental capacity." (Id.). Plaintiff concedes that, pursuant to 20 C.F.R. § 404.1527(f)(2)(i) and 20 C.F.R. § 416.927(f)(2)(i), the ALJ is not bound by the findings of state agency medical or psychological personnel such

13

1   as Dr. Gregg. (Id. at 3).  He further concedes that the ALJ mentioned
2   the limitations assessed by Dr. Gregg.  (Id. at 4; AR 15).  However, he
3   asserts that "the ALJ must consider the doctor's opinion and explain the
4   weight given to the doctor's opinion in the decision."  (Id.).

6        As the Commissioner points out, the ALJ expressly stated that he
7   accepted Dr. Gregg's findings.  (See Jt. Stip. at 4; AR 15).  The ALJ
8   explicitly noted that Dr. Gregg found that Plaintiff was "only
9   moderately limited in the following areas: the ability to understand and
10  remember detailed instructions; the ability to carry out detailed
11  instructions; the ability to maintain attention and concentration for
12  extended periods; and the ability to interact appropriately with the
13  general public."  (AR 15).  The ALJ specifically found that these
14  limitations supported Dr. Gregg's Mental RFC, which concluded that
15  Plaintiff was able to carry out non-public simple repetitive tasks.
16  (Id.).  There is no error in the ALJ's treatment of Dr. Gregg's report.

18  **B.    The ALJ Properly Considered The Treating Psychiatrist's Opinion**

20       As Plaintiff notes, he was evaluated by Dr. Adly Azab on January
21  13, 2007.  (Jt. Stip. at 5; AR 181).   Dr. Azab noted that Plaintiff
22  complained of anxiety, poor sleep, periods of euphoria alternating with
23  periods of crying, and feelings of vulnerability.  He noted pressured
24  speech, an anxious mood, and fair insight and judgment.  (AR 182).  Dr.
25  Azab assessed a GAF score of 50.  (Id.).  Plaintiff asserts that the ALJ
26  ignored all of Dr. Azab's findings other than the GAF score of 50, and
27  the ALJ did not expressly accept or reject the GAF score.  (Jt. Stip.
28  at 6).  Plaintiff further asserts that a GAF score of 50 "is indicative

1  of a disabling level of impairment that would significantly affect . .
2  . Plaintiff's ability to perform basic work related activities.  (Id.
3  at 7).

4

5      The ALJ may not reject significant, probative evidence without
6  explanation.  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.
7  1984).  This does not mean, however, that the ALJ must discuss every
8  piece of evidence presented.  See id.  ("The Secretary, however, need
9  not discuss all evidence presented to her.").  Nor does it mean that a
10  reviewing court is "deprived of [its] faculties for drawing specific
11  and legitimate inferences from the ALJ's opinion."  Magallanes v. Bowen,
12  881 F.2d 747, 755 (9th Cir. 1989).  Although the treating physician's
13  opinion is entitled to great deference, it is "not necessarily
14  conclusive as to either the physical condition or the ultimate issue of
15  disability."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600
16  (9th Cir. 1999).  "When there is conflicting medical evidence, the
17  Secretary must determine credibility and resolve the conflict."  Matney
18  v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ may reject
19  a treating physician's opinion in favor of a conflicting opinion of an
20  examining physician if the ALJ makes findings setting forth specific,
21  legitimate reasons for doing so that are based on substantial evidence
22  in the record.  Magallanes, 881 F.2d at 751.  In addition, the ALJ need
23  not accept the opinion of any physician, including a treating physician,
24  if that opinion is brief, conclusory, and inadequately supported by
25  clinical findings.  See Matney, 981 F.2d at 1019.

26

27      Here, the ALJ specifically pointed to Dr. Azab's assessment of a
28  GAF score of 50, as well as his evaluation of Plaintiff's anxiety and

poor sleep.  (AR 15-16).  Although he did not specifically mention the material in the check-the-box section of the evaluation that indicated Plaintiff had pressured speech and fair insight and judgment (see AR 182), this does not mean that Dr. Azab's evaluation was ignored or rejected.  See Vincent, 739 F.2d at 1394-95.  Because the ALJ did not ignore or reject any treating physician's opinion, he was not required to give the "specific and legitimate" reasons necessary to reject a treating physician's opinion.

Second, to the extent Plaintiff complains that the ALJ did not expressly state whether he accepted or rejected the GAF score of 50, there is no error.  GAF scores are not dispositive in social security cases.  See 65 Fed. Reg. 50746, 50765 (August 21, 2000) (GAF scores are not directly correlative to Social Security severity assessments).  A GAF score is only intended to be used to plan treatment and measure its impact.  See DSMV IV, at 32.  The ALJ's failure to explicitly accept or reject the GAF score in the residual functional capacity assessment does not, by itself, make the assessment inaccurate.  See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); see also Brewster v. Barnhart, 366 F. Supp. 2d 858, 876 (E.D. Mo. 2005) (citing Howard).

Finally, the ALJ's decision was supported by substantial evidence.  The ALJ relied on the opinion of examining physician Dr. Yang, who noted that, although Plaintiff reported depression and anxiety as well as

16

various serious stressors, such as the deaths of both of his parents, a robbery, and an assault, Plaintiff was able to live alone, run errands, shop and cook, get along with others, visit family and friends, and manage his own money and expenses. (AR 262-63). Furthermore, Dr. Yang's mental status examination noted that Plaintiff had an appropriate mood, full affect, intact memory, and a "linear, tight and goal directed" thought process. (AR 264-65). Dr. Yang's functional assessment opined that Plaintiff would "have some mild difficulty performing complex tasks." (AR 265).

As noted above, the ALJ also relied on the opinion of state agency physician Dr. Gregg, who considered Plaintiff's depression and anxiety and concluded that Plaintiff's functional limitations did not meet the paragraph B criteria, as Plaintiff had only mild restriction of activity of daily living, moderate difficulties in maintaining social functioning and moderate difficulty in maintaining concentration, persistence, and pace. (AR 169). Dr. Gregg further noted that Plaintiff took public transportation, went out alone, managed his money, and wrote well. (AR 171). Dr. Gregg opined that Plaintiff's marijuana use "would account for anxiety, depression, and decreased focus and memory." (Id.). These opinions, which are consistent with much of the record evidence, constitute substantial evidence in support of the Commissioner's decision. See Morgan, 169 F.3d at 600.

**C.    The ALJ Posed A Complete Hypothetical To The Vocational Expert**

Plaintiff asserts that the ALJ posed an incomplete hypothetical to the Vocational Expert when he "failed to mention Dr. Gregg's [Mental]

17

RFC findings that Plaintiff is moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods." (Jt. Stip. at 11; AR 172). This Court disagrees.

In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "derive[] from the RFC [and] must set out all the limitations and restrictions of the particular claimant." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ is not required to include limitations for which there was no evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (ALJ not bound to accept as true the restrictions set forth in hypothetical if they were not supported by substantial evidence).

Here, the ALJ's hypothetical included Plaintiff's age, education, work experience, and explicitly included Dr. Gregg's conclusion in his functional capacity assessment that Plaintiff was capable of nonpublic simple repetitive tasks. (AR 62, 174). As discussed above in Section VII.A, in making this assessment, the ALJ considered Dr. Gregg's opinion and determined that it supported the assessment that Plaintiff was "capable of at least non-public simple repetitive tasks." (AR 15). Thus, the ALJ included all limitations supported by substantial evidence in his hypothetical to the VE.

\\

\\

\\

18

1    **D.    The ALJ Properly Determined Plaintiff Capable Of Performing The**
2          **Jobs Of Hand Packager And Office Helper**

3

4         Plaintiff argues that the ALJ erred in determining that Plaintiff
5    was capable of performing the job duties of Hand Packager and Office
6    Helper because, in making the determination, the ALJ did not consider
7    Dr. Gregg's opinion that Plaintiff was moderately limited in his ability
8    to understand and remember detailed instructions and moderately limited
9    in his ability to carry out detailed instructions.  (Jt. Stip. at 13).
10   Plaintiff points out that both jobs as defined in the Dictionary of
11   Occupational Titles ("DOT"), require Plaintiff to function at reasoning
12   level 2, which, in turn, requires the ability to "apply commonsense
13   understanding to carry out detailed but uninvolved written and oral
14   communications."  (Jt. Stip at 13; id. at 14 (quoting DOT, Appx. C,
15   Section III); see also id., Exhs. A, B, C).

16

17        The ALJ may rely on expert testimony that contradicts the DOT if
18   the records contains persuasive evidence to support the deviation.  See
19   Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Tommasetti v.
20   Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008).  Here, however, Plaintiff's
21   limitations to simple repetitive work are consistent with a reasoning
22   level of 2.  As Plaintiff notes, jobs with a reasoning level of 2
23   require the ability to "carry out detailed but uninvolved" instructions.
24   In Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005), the
25   district court parsed the meaning of the phrase "detailed but
26   uninvolved" in the DOT.  In that case, as here, the ALJ found that the
27   Plaintiff could perform simple repetitive tasks.  The court noted that
28   a DOT reasoning level of 1 "appl[ies] only to the most elementary of

occupations; only the slightest bit of rote reasoning being required." Id. at 984.  The reasoning required to perform simple repetitive tasks requires more than this level of reasoning.  Id.  Although reasoning level 2 states that "the worker must be able to follow 'detailed' instructions, it also . . . downplay[s] the rigorousness of those instructions by labeling them as being 'uninvolved.'" Id.  A similar analysis applies here.  The ALJ found that the moderate limitations on Plaintiff's ability to understand, remember, and carry out detailed instructions supported the conclusion that Plaintiff was capable of performing simple, repetitive tasks.  Plaintiff's limitations do not render him incapable of performing a job requiring the understanding to carry out "detailed but uninvolved" instructions contemplated by reasoning level 2.  Remand is therefore unnecessary on this issue.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 7, 2010.


_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

20